**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
EFFINGHAM JAMES,

               Plaintiff,

           - against -

ODRA N. ARANGO, A&A GLOBAL
RESOURCES INC., aka A&A GLOBAL
RESOURCES LTD., ANN ALVAREZ,
ALFRED MILLS, DISCOUNT FUNDING
ASSOCIATES, WALLY DUVAL

              Defendants.
-------------------------------------------------------X

               **REPORT AND**
               **RECOMMENDATION**

               CV 05-2593 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ S̲T̲A̲T̲E̲M̲E̲N̲T̲

      Plaintiff Effingham James ("Plaintiff" or "James") commenced this action against

Defendants Odra N. Arango ("Arango"), FFFC, National City Home Loan Services, Inc.

("National City"), A&A Global Resources, Inc. ("AAGR"), Ann Alvarez ("Alvarez"), Alfred

Mills ("Mills"), Discount Funding Associates ("DFA"), Wally Duval ("Duval") and Charles

Liechtung ("Liechtung") alleging violations of the Racketeer Influenced and Corrupt

Organization Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d), as well as state law claims for conversion,

deceptive practices and legal malpractice (against Defendant Duval only).

      The Complaint was filed on May 27, 2005. DE 1. Defendant FFFC filed an Answer to

the Complaint and Defendants Liechtung and DFA each moved to dismiss the Complaint. After

a hearing on the motions, Judge Platt dismissed the motions and directed Plaintiff to amend the

Complaint. DE 16. An Amended Complaint was filed on February 4, 2006. DE 17. Defendants

FFFC and DFA each filed an Answer to the Amended Complaint and Defendant Liechtung moved to dismiss the Amended Complaint. Defendant Liechtung's motion to dismiss was granted in part and denied in part by Judge Platt. DE 37. FFFC, National City, and Liechtung each filed motions for summary judgment, which were granted by Judge Platt. DE 98, 100. Thus, all claims against Defendants FFFC, National City, and Liechtung have been dismissed.

On June 23, 2009, Defendant DFA's counsel filed a letter motion to withdraw as counsel. This Court granted the motion on July 2, 2009 and stated that, "As I have made clear in these proceedings, under New York law, a corporation cannot legally proceed without counsel. Accordingly, I am giving DFA thirty (30) days to obtain new counsel. DFA is further cautioned that if new counsel does not file a notice of appearance within thirty (30) days, Plaintiff has the right to move for default against Defendant DFA." *Id.* DFA's former counsel subsequently filed a Certificate of Service stating that he had served the Order granting the motion to withdraw on DFA by personal hand delivery, fax, email and certified mail. DE 85. No new counsel ever appeared for DFA in this action, nor did DFA attempt to participate in the litigation following withdrawal of its counsel. *See* DE 80, 83, 84. Defendants Arango, AAGR, Alvarez, Mills, and Duval never answered the Complaint or Amended Complaint or appeared in this action in any way. Plaintiff now moves for a default judgment against Defendants DFA, Arango, AAGR, Alvarez, Mills and Duval (collectively, "Defendants"). DE 107.[1] The Clerk of the Court issued a certificate of default as to these remaining Defendants on March 29, 2010. DE 90. District

---

[1] Plaintiff initially moved for a default judgment against Defendants on September 14, 2009, and the motion was granted by Judge Platt on March 29, 2010. DE 91. However, it was subsequently noted that Plaintiff had improperly filed his motion for default as a letter motion. Thus, the motion for a default judgment and the Order granting a default judgment were deemed withdrawn, and Plaintiff was given the opportunity to file the present motion for default. *See* DE 108.

Judge Platt referred the matter to me for a Report and Recommendation as to whether the pending motion for default judgment should be granted, and to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded based upon such determination. DE 93. A formal inquest hearing was held on September 21, 2010 at which Plaintiff and his counsel appeared. DE 111.

## II.    PERTINENT FACTS

In the Amended Complaint, James alleges that Defendants conspired to defraud him of his home located at 119-47 166 Street, Jamaica, New York. Plaintiff had owned his home since 1981, but at some point prior to 2002, Plaintiff became unable to keep up with his mortgage payments and the lender began foreclosure proceedings. Am. Compl. ¶¶ 14-15. About that time, Plaintiff learned of an organization called AAGR, "which claimed it helps people solve their financial problems including foreclosures and empowers people with information with which to effectively invest and financially enrich themselves." *Id.* ¶ 16. AAGR is jointly owned by Defendants Alvarez and Mills. *Id.* ¶18.

Plaintiff became a member of the AAGR organization by paying a membership fee of $299 and attending an initiation meeting. *Id.* ¶ 28. Plaintiff informed an AAGR representative of his impending foreclosure, and the AAGR representative told Plaintiff that AAGR would assist in securing a mortgage for Plaintiff's daughter so that he could transfer the property to her. *Id.* ¶ 30. In May 2002, Defendant Alvarez telephoned Plaintiff and informed him that the closing was scheduled in Rosedale, New York for May 29, 2002. On the morning of May 29, 2002, Alvarez telephoned Plaintiff and informed him that AAGR had been unable to obtain a mortgage

for Plaintiff's daughter and that in order to avoid foreclosure, he must transfer his property to AAGR. *Id.* ¶ 37.

When Plaintiff arrived at the closing, he questioned Alvarez as to why she had not been able to get a mortgage for his daughter and why she had not informed him sooner. *Id.* ¶ 39. Alvarez merely informed him that the foreclosure would take place in 24 hours and his only option was to transfer the house to AAGR. *Id.* ¶ 38-39. Alvarez told the Plaintiff that AAGR would allow him to lease the house and he would have an option to purchase it back in one year. *Id.* ¶ 40. Plaintiff was left waiting while the closing went on in an adjacent room. *Id.* ¶ 41.

After waiting for three hours, Alvarez returned and gave the Plaintiff documents to sign. *Id.* ¶ 41. Plaintiff attempted to read the documents, but Alvarez told him it was "too late" and to "just sign." *Id.* ¶ 42. Plaintiff was then given the purported lease agreement and was told to mail a monthly payment of $1885.00 to an address in Valley Stream, New York. *Id.* ¶ 44. Subsequently, Plaintiff learned that the property had not been transferred to AAGR, but that the deed had been transferred to Defendant Arango, whom Plaintiff had never met and to whom he had not intended to transfer the property. *Id.* ¶45.

Plaintiff also came to learn that he was purportedly represented at the closing by Defendant Wally Duval, Esq. *Id.* ¶ 60. Despite the fact that Duval was paid $750 for representing Plaintiff at the closing, Duval had never met Plaintiff and Duval did not attend the closing. *Id.* ¶ 60. Plaintiff also alleges that Defendant DFA, a licensed mortgage broker, "knowingly and intentionally participates and makes itself available to be used by defendants, Alvarez, Alfred Mills, and AAGR. . . . [to] fraudulently procure mortgage loans and to give legitimacy to the fraudulent distribution of proceeds . . ." *Id.* ¶ 61. Plaintiff alleges that DFA

also received a payment for services purportedly rendered to Plaintiff even though it did not provide any such service. *Id.* ¶ 64.

### III.    MOTION FOR A DEFAULT JUDGMENT

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)).  A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Garden City Boxing Club, Inc. v. Morales*, 2005 WL 2476264, at *3 (E.D.N.Y.  Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir. 1995)).  The only question remaining, then, is whether Plaintiff has provided adequate support for the relief he seeks.  *Greyhound Exhibitgroup, Inc*., 973 F.2d at 158.

#### A.    Liability

As an initial matter, this Court must determine whether Plaintiff has adequately set forth in the Amended Complaint a *prima facie* case under the RICO statute as well as under the other claims asserted in the pleading.

##### 1.    RICO Liability

Plaintiff's first and second claims in the Amended Complaint allege violations of § 1962(c) and § 1962(d), respectively, against all defendants based on underlying claims of mail and wire fraud.  In order to state a private claim for damages under RICO, a plaintiff must plead "(1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's violation." *Commercial Cleaning Servs. v. Colin*

*Serv. Sys., Inc.,* 271 F.3d 374, 380 (2d Cir. 2001) (citing *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir. 1994)). To satisfy the first prong, a plaintiff must establish that the defendant has violated the substantive RICO statute, specifically, the criminal provisions of the statute. In doing so, the plaintiff must allege the existence of seven requisite elements identified by the Second Circuit in *Moss v. Morgan Stanley, Inc*., 719 F.2d 5 (2d Cir. 1983). Those factors are: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id*. at 17 (quoting § 1962(a)-(c)).

Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996) (noting that "racketeering activity" includes "conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud"). In order to plead a "pattern," a plaintiff must plead at least two predicate acts of racketeering activity for each defendant. 18 U.S.C. § 1961(5).

To plead claims of mail and wire fraud sufficiently, Plaintiff must establish: (1) the existence of a scheme to defraud; (2) the use of United States mails or interstate wire communications to further that scheme; and (3) evidence that Defendants did so with a specific intent to defraud. *Am. Arbitration Ass'n, Inc. v. Defonseca*, No. 93 Civ. 2424, 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996); *see also Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004). With respect to the first prong, "the complaint must allege the existence of a

fraudulent scheme with the requisite specificity," so that Plaintiff must "specify what statements were made, who made them, when and where, and the respect in which those statements were fraudulent." *Am. Arbitration Ass'n, Inc.*, 1996 WL 363128 at *9. Regarding the second prong, "there is no need to specify the time and place of each mail or wire communication as long as the mechanics of the underlying scheme are pled with particularity." *Id.* Plaintiff, however, "must specifically allege the nature of each mail or wire communication, and identify the role of the communications in furthering defendants' fraudulent scheme." *Id.*

### A.  Wire Fraud Allegations

Wire fraud requires a "communication by wire in 'interstate or foreign commerce.'" *DeFazio v. Wallis*, 500 F. Supp. 2d 197, 203 (E.D.N.Y. 2007) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999)). "Purely intrastate communications are not sufficient under the statute." *DeFazio*, 500 F. Supp. 2d at 203.

Based upon a review of the Amended Complaint, the Court notes that Plaintiff sets forth the following items as alleged instances of wire fraud:

- "Sometime in May [2002], plaintiff was called by Ann Alvarez and told that closing has been scheduled at the office of defendant, Charles Liechtung, at 1 Cross Island Plaza, Rosedale, NY, for 8pm. on May 29, 2002." Am. Compl. ¶ 36.

- Defendant Alvarez called Plaintiff on the morning of May 29, 2002 and told him AAGR could not get a mortgage for his daughter and that he must transfer the property to AAGR. *Id.* ¶ 37.

- Defendant DFA "generated a mortgage application on or about April 2002 for Odra Arango and knowingly and intentionally misrepresented in the application that Odra Arango was purchasing subject property to own and occupy when Discount Funding knew the representation to be false and caused the mortgage

application to be sent to the offices of FFFC via Facsimile for processing and underwriting."[2]  *Id.* ¶88(a).

- Defendant Mills generated a false and fraudulent mortgage application for Arango and caused it to be sent to FFFC via facsimile.  *Id.* ¶ 89(a).

- Defendant Alvarez aided and abetted in generating a false and fraudulent mortgage application for Arango and caused it to be sent to FFFC via facsimile.  *Id.* ¶ 90(a).

- Defendant AAGR generated a false and fraudulent mortgage application for Arango and caused it to be sent to FFFC via facsimile.  *Id.* ¶ 91(a).

- Defendant Arango misrepresented on a mortgage application that she intended to own and occupy the property and caused the application to be sent to FFFC via facsimile.  *Id.* ¶ 92(a).

Each of the parties in this action is either a resident of New York or maintains a place of business in New York.  *See* Am. Compl. ¶¶ 5-14.  Plaintiff does not allege that any of these wire communications occurred in interstate or foreign commerce.  "Accordingly, wire fraud allegations fail in the absence of any claim that the relevant wire communications occurred in interstate or foreign commerce."  *Brookdale University Hospital & Medical Center, Inc. v. Health Ins. Plan of Greater New York*, No. 07-CV-1471, 2009 WL 928718, at *5 n.1 (March 31, 2009) (internal quotations omitted); *see also Brooke v. Schlesinger*, 898 F. Supp. 1076, 1082 (S.D.N.Y. 1995) ("Where all parties to the phone call are residents of or maintain offices in the same state, and the complaint is otherwise silent, the only reasonable inference to be drawn is that the call is intrastate."); *McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) ("Where

---

[2]      Plaintiff makes an identical allegation in the Amended Complaint alleging that a false mortgage application was prepared for Carmen Sifontes.  *See* DE ¶ 88(c).  There are other references throughout the Amended Complaint to "Carmen Sifontes," however, there is no explanation as to who this person is or how he or she was connected to the alleged fraud.  As such, this Court will not consider the allegations pertaining to Carmen Sifontes as potential predicate acts under RICO.

all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated.").  Thus, lacking any allegation of intrastate communication, Plaintiff's wire fraud allegations are insufficient to serve as a predicate act under the RICO statute.  *See DeFazio*, 500 F. Supp 2d. at 204.

## B. Mail Fraud Allegations

In the Amended Complaint, Plaintiff states that DFA, Mills, AAGR, and Arango "generated a mortgage application on or about April 2002 for Odra Arango and knowingly and intentionally misrepresented in the application that Odra Arango was purchasing subject property to own and occupy when [DFA, Mills, and Arango] knew the representation to be false and caused the mortgage application to be sent to the offices of FFFC via Mail for processing and underwriting." Am. Compl. ¶¶ 88(b), 89(b), 91(b), 92(b).  Plaintiff further alleges that Alvarez aided and abetted in the generation and mailing of this fraudulent mortgage application.  *Id.* ¶ 90(b).

Even if these allegations were pled with sufficient particularity to maintain a charge of mail fraud, which this Court does not determine at this time, the allegations constitute only  one predicate act:  the mailing of the fraudulent mortgage application in April 2002.  This is insufficient to sustain a RICO claim, which requires an allegation of two predicate acts.  As such, this Court finds that Plaintiff has not established Defendants' liability under RICO.[3]

## 2. Conversion

---

[3] After the inquest hearing, I kept the record open to allow Plaintiff to submit additional materials in support of his position that the allegations in the Amended Complaint were sufficient to state valid RICO claims.  DE 111.  Plaintiff's attorney submitted a declaration in support of Plaintiff's claims, which contained six pages of legal argument addressing this issue. DE 112.  I have reviewed the arguments made in the attorney declaration and find that they do not alter my determination that Plaintiff has failed to establish Defendants' liability under RICO.

In the fifth count of the Amended Complaint, Plaintiff alleges that all Defendants "converted the proceeds of plaintiff's equity in his real property with the intent to deprive and dispossess him of the property." Am. Compl. ¶ 136. Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Ironforge.com v. Paychex, Inc.*, No. 09-CV-6264, 2010 WL 3911419, at *10 (W.D.N.Y. Oct. 5, 2010) (internal quotations omitted). "The basis of an action for conversion is the denial or violation of the plaintiff's dominion over, rights to, or possession of property." *Id.* (quoting *Sporn v. MCA Records*, 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983)). "A conversion implies a wrongful act, a mis-delivery, a wrongful disposition, or withholding of the property." *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir.1993).

The tort of conversion does not apply to real property. *Roemer & Featherstonhaugh P.C. v. Featherstonhaugh*, 267 A.D.2d 697, 697, 699 N.Y.S.2d 603, 604 (3d Dep't 1999). Thus, Plaintiff cannot maintain a cause of action for conversion to the extent that it is based on Defendants' dominion over the Property. *See Feinberg v. Katz*, No. 99 Civ. 45(CSH), 2002 WL 1751135, at *18 n. 9 (S.D.N.Y. July 26, 2002). However, Plaintiff's claim is based on the proceeds of the sale of the property, not the property itself. Federal courts applying New York law have found that "the cash proceeds of the sale of real property can be converted." *In re Verestar, Inc.*, 343 B.R. 444, 467 (Bankr. S.D.N.Y. 2006); *see also Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 3238955, at *8 (July 19, 2010) (*adopted in* 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010). "When, in an action for conversion, the property in question is money, that money must be specifically identifiable and be subject to an obligation to be

returned or to be otherwise treated in a particular manner." *Robert Smalls Inc.*, 2010 WL 3238955, at *8 (internal quotations omitted).

As owner of the property, Plaintiff had a possessory interest in the proceeds of the sale of the property. The Amended Complaint states that those proceeds were divided among the Defendants to the exclusion of the Plaintiff. Furthermore, the proceeds of the sale are sufficiently identifiable for the purposes of an action for conversion. *See Key Bank v. Grossi*, 227 A.D.2d 841, 843, 642 N.Y.S.2d 403, 405 (3d Dep't 1996). Thus, the Amended Complaint adequately states a claim for conversion against Defendants.

### 3. Deceptive Practices

In the third count of the Amended Complaint, Plaintiff alleges that AAGR and DFA engaged in deceptive practices in violation of New York General Business Law § 349. New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a) (McKinney 1996). "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Northwestern Mutual Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741 (1995); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 785 N.Y.S.2d 399, 402, 818 N.E.2d 1140 (2004). The "consumer-oriented" requirement may be satisfied by showing that the conduct at issue "potentially affect[s] similarly situated consumers." *Oswego Laborers'*, 623 N.Y.S.2d at 533,

647 N.E.2d 741. Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large." *Id*. at 532, 647 N.E.2d 741.

The Amended Complaint repeatedly alleges that AAGR and DFA engaged in systematic practices to repeatedly defraud consumers. The Amended Complaint not only sets forth how the scheme worked and how Defendants lured customers, but also names other individual victims of the fraud. As such, I find that Plaintiff has adequately pled a violation of New York's deceptive practices law against AAGR and DFA.

### 4.    Legal Malpractice

The fourth count of the Amended Complaint alleges legal malpractice on the part of Defendant Duval. "To establish legal malpractice under New York law, a plaintiff must show: '(1) a duty, (2) a breach of the duty, and (3) proof that actual damages were proximately caused by the breach of the duty.'" *Kirk v. Heppt*, No. 05-CV-9977, 2009 WL 2870167, at *9 (S.D.N.Y. Sept. 3, 2009) (quoting *Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir.1999). An attorney-client relationship is a necessary element to a legal malpractice claim. "It is well established that, with respect to attorney malpractice, absent fraud, collusion, malicious acts, or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence." *Decker v. Nagel Rice LLC*, 09-CV-9878, No. 2010 WL 2346608, at *3 (May 28, 2010) (citing *Moran v. Hurst*, 32 A.D.3d 909, 911, 822 N.Y.S.2d 564 (2d Dep't 2006)).

There is no allegation that Plaintiff and Duval had an attorney-client relationship. However, Plaintiff may be able to satisfy the first prong of this test by showing that the fraudulent nature of Duval's participation places Plaintiff "within the ambit of the exception to

the privity requirement." *Fredriksen v. Fredriksen*, 30 A.D.3d 370, 372, 817 N.Y.S.2d 320 (2d Dep't 2006). Notwithstanding that prospect, I find that Plaintiff cannot satisfy the third prong of the test because the allegations in the Amended Complaint are insufficient to show that Duval's actions were the proximate cause of the Plaintiff's loss. Duval is alleged to have received funds from the proceeds of the fraudulent sale. However, there is no allegation that Duval took an active part in executing the sale. If she had not participated, the closing could still have gone forward. Thus, her participation was not the "but for" cause of Plaintiff's injury. *See Kirk*, 2009 WL 2870167, at *9 ("The causation requirement is a high bar to attorney malpractice liability and seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice.") (internal quotations omitted). As such, I find that Plaintiff has not established Defendant Duval's liability for legal malpractice.

**B.      Entry of Default**

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R.. Civ. P. 55(a); *see FashionTV.com GMBH v. Hew*, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiff has done here. *See Kieit Constructors, Inc. v. Franbuilt, Inc.,* 2007 WL 4405029 at *2 (W.D.N.Y. Dec. 14, 2007); *FashionTV.com*, 2007 WL 2363694, at *2. The Clerk of the Court noted the default of Defendants AAGR, Alvarez, Arango, DFA, Duval and Mills, but judgment has not been entered for Plaintiff. *See* DE 90.

13

Rule 55(b)(2) provides that, except in cases in which "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" (*see* Rule 55(b)(1)), "the party must apply to the court for a default judgment." The determination of a motion for default judgment is left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 160, 610, 615 (2d Cir. 1999).

In determining whether to grant a default judgment, the court may consider "numerous factors, including 'whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt.'" *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see also Basile v. Wiggs*, 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for court's consideration including defaulting party's bad faith, "possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect") (second alteration in the original) (quoting *Feely v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999)).

As to the first factor, the failure of Defendants Alvarez, Mills, Arango, AAGR, and Duval to respond to the Complaint or Amended Complaint sufficiently demonstrates wilfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007). Plaintiff has submitted affidavits of service demonstrating that the Complaint and Amended Complaint were served on each of these Defendants. *See* DE 107, Exs. 3, 5-9. As noted above, these Defendants never responded in any way to the Complaint or Amended Complaint, nor did they request an extension of time in which to do so. Defendant DFA responded to the Complaint and the Amended Complaint. However, DFA ignored this Court's Order to seek substitute counsel by a given date and subsequently neither an attorney for DFA no a representative of DFA appeared at scheduled conferences. This conduct shows a willful and deliberate disregard for this Court's Orders, which militates in favor of entry of a default judgment. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (upholding default judgment where "the record was clear that [defendants], not having obtained counsel as ordered by the time of the January 1999 conference (and having filed no papers in opposition to the default motion by the court's March 1 deadline), were in default").

Next, the Court must consider whether Defendants have a meritorious defense. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). However, a defendant must "present evidence of facts that if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). The Court is unable to make a determination as to whether Defendants Alvarez, Mills, Arango, AAGR, and Duval have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the

Court.  Hence, where no defense has been presented and, "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *Chen v. Jenna Lane, Inc.,* 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed.1998)).   The Amended Complaint, the allegations of which are deemed admitted by Defendants in light of their default, describes in detail the factual allegations that underlie Plaintiffs' claims.  *See Indymac Bank*, 2007 WL 4468652, at *1.  Indeed, accepting all allegations in the Complaint as true, as noted above, the Plaintiff has asserted a valid claim of conversion and deceptive practices.

As discussed, DFA responded to the Complaint by filing a motion to dismiss.  Judge Platt denied the motion to dismiss, without prejudice, and granted Plaintiff leave to amend the Complaint.  DFA then filed an Answer to the Amended Complaint denying most of the allegations contained therein and asserting eight affirmative defenses including: failure to state a cause of action; failure to allege a claim of fraud with particularity, RICO and conspiracy; failure to allege reasonable reliance, scienter or knowledge of fraud, unclean hands; waiver, estoppel and laches, among others.  *See* DE 51.  While the Answer contains only general defenses and does not present any underlying facts, that response is sufficient to raise a meritorious defense.  *See Wharton v. Nassau County*, No. 10-CV-0265, 2010 WL 4878998, at *2 (E.D.N.Y. Nov. 22, 2010) ("Defendants, by filing an Answer that denies Plaintiff's allegations and raises fourteen affirmative defenses, have mounted a meritorious, although untested, defense."); *Franco v. Ideal Mortgage Bankers, Ltd.*, No. 07-3965, 2010 WL 3780972, at *3 (recommending that Defendant

who filed an answer asserting twenty-five affirmative defenses be considered to have raised a meritorious defense).

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003)).

Notwithstanding the fact that DFA has raised a meritorious defense, this Court finds that the factors set forth in *Mason Tenders* weigh in favor of granting Plaintiff's motion for a default judgment. The fact that Defendants have not submitted briefs in opposition to Plaintiff's motion, and did not submit briefs in opposition to Plaintiff's previous (withdrawn) motion, further supports that conclusion. Moreover, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, Defendants will still have fourteen days after the service of this Report and Recommendation to raise objections to these findings should they choose to do so. Therefore, I respectfully recommend to Judge Platt that Plaintiff's motion be granted and that a default judgment be entered against Defendants DFA, Arango, AAGR, Alvarez, Mills and Duval.

## IV.    DAMAGES CALCULATION

As discussed above, the Court has found that Plaintiff has sufficiently established liability for conversion as to all Defendants and for deceptive practices as to DFA and AAGR. Thus, the Court must determine the amount of damages to which Plaintiff is entitled under those claims.

Plaintiff seeks recovery of the value of equity he had in his home at the time of the fraudulent transfer as well as recovery of the rental payments he sent to Defendants under the fraudulent lease agreement. Plaintiff also seeks recovery of his costs and attorneys' fees.[4]

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir.1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). As noted above, this Court held a formal inquest hearing on September 21, 2010 at which time Plaintiff submitted evidence in support of his damages claims. After the hearing, Plaintiff submitted additional support for his damages claims.[5] DE 112.

---

[4]  Additionally, pursuant to the RICO statute, Plaintiff seeks recovery of attorneys' fees for prior related state court litigation that occurred as a result of the Defendants' actions. While the Court recognizes that courts within the Second Circuit have, in particular circumstances, awarded prior legal fees incurred as a result of a RICO violation, *see, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988), the Court will not award legal fees for prior actions because the Court finds that the RICO claims have not been established in this case. Plaintiff cites two non-RICO cases for the proposition that "attorneys' fees for the work done on all related claims will be allowed where all the claims arose from related legal theories and/or a common occurrence or facts." DE 112 ¶ 34. However, the two cases cited deal with whether fees will be awarded for related claims brought *in the instant litigation*, not related claims brought in prior actions. *See Hernandez v. Hill Country Telephone Co-op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)).

Plaintiff also seeks treble damages as permitted by 18 U.S.C. § 1964(c). However, as noted above, because the Court finds that Plaintiff did not sufficiently state a RICO claim, Plaintiff cannot be awarded treble damages.

[5]  Counsel for Defendants FFFC and National City, against whom all claims have been dismissed, filed a letter objecting to Plaintiff's post-inquest submission. DE 113. The basis of FFFC and National's objection is two-fold. First, FFFC and National City object because Plaintiff filed his submission one day after the deadline set by this Court. The Court had instructed Plaintiff to file additional papers by November 3, 2010. *See* DE 111. Plaintiff's

Plaintiff states that the value of equity in his property which was converted by Defendants should be calculated by subtracting the amount due on Plaintiff's mortgage at the time of the transfer from the market value of the home. The Court agrees with this calculation. However, the market value of the home must also be calculated at the time of the transfer. I find that Plaintiff has not submitted information sufficient to allow the Court to make such a calculation. Plaintiff claims that the value of the property should be assessed at $430,000. DE 109, ¶ 19. This is based on an appraisal that was conducted by Licensed Real Estate Broker Lamar M. Collins in August 2010.[6] DE 109, Ex. 17. The appraisal states that it was conducted "for the purpose of estimating [the property's] market value, as of August 25, 2010." *Id.* However, the transfer of the property took place in May 2002. Thus, the amount of the proceeds that were converted by Defendants must be based on the value of the property as of May 2002. The value of the property in August 2010 is irrelevant. Without having any evidence to support the value of the property in 2002, it is impossible for this Court to determine the amount of damages that should be awarded to Plaintiff for the conversion of the proceeds of the equity in his property. As such, I respectfully recommend to Judge Platt that the award of damages for the value of the

_____

submission was filed at 4:47 a.m. on November 4, 2010. *See* DE 112. Given that the submission was less than five hours late and that there is no prejudice to any other party resulting from the late filing, this Court will consider Plaintiff's submission. Second, FFFC and National City object because Plaintiff's submission makes references to the "FFFC enterprise," which FFFC claims is inappropriate since all claims against it were dismissed. Because summary judgment was granted in favor of FFFC, the Court respectfully recommends to Judge Platt that all references to FFFC as "an enterprise" in Plaintiff's post-inquest submission be stricken.

[6]     The Declaration of Plaintiff's Attorney, Alaba A. Rufai, [DE 109] references an appraisal conducted in January 2007. *See* DE 109 ¶ 18. However, the only appraisal attached to the Declaration was done in August 2010. The Declaration also references an appraisal attached as "Exhibit 19." However, the Declaration only attaches 17 exhibits. It is presumed that these are merely typographical errors.

converted proceeds be held in abeyance at this time.  I respectfully recommend that Plaintiff be permitted to submit an appraisal assessing the value of the property as of May 2002 within the fourteen (14) days allotted for the parties to object to this Report and Recommendation, or within an alternative period of time to be designated by Judge Platt.

Plaintiff also seeks recovery of the amount he paid to Defendants each month in rent as a result of the fraudulent transfer of the property.  Plaintiff submitted an Affidavit stating that he made a payment of $1885.00 to Defendants each month from June 2002 to November 2003.  *See* Affidavit of Plaintiff at DE 109, ¶ 10.  Plaintiff has submitted a series of receipts of money orders sent to AAGR in support of his damages claim.  DE 109, Ex. 16.  While not all the receipts are entirely legible, the receipts do support Plaintiff's damages calculation.  Thus, because Defendants have defaulted and all allegations in the Amended Complaint are deemed true, Plaintiff is entitled to recovery of  $33,930, representing 18 monthly payments of  $1885.00 each.

Plaintiff has submitted a request for costs in the amount of $6,091.00 representing costs including filing fees, legal database searches, service of process fees, postage, photocopying, travel, and deposition transcript fees.[7]  DE 109 ¶ 21.  I have examined Plaintiff's request for costs and find that it is reasonable, and, thus, I respectfully recommend to Judge Platt that costs be awarded in the total amount of $6,091.00.  *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *9 (E.D.N.Y. Oct. 7, 2005) (awarding costs consisting of process server fees, filing fee and investigative expenses); *Kingvision Pay-Per-View Ltd. v. Cazares*, No. 05 Civ. 2934, 2006 WL 2086031, at * 6 (E.D.N.Y. July 26, 2006).

---

[7]       In his post-inquest submission, Plaintiff asserts a claim for fees in the amount of $11,149.11.  This larger amount includes fees incurred for prior related state court litigation.  *See* DE 112 ¶36-37, and Ex. B.  However, as noted above, this Court will not award damages or fees incurred in actions other than the present litigation.

Plaintiff also requests reimbursement of attorneys' fees incurred in this litigation. Plaintiff's counsel has provided no case law in support of an award of attorneys' fees under the state law claims. Because the Court finds that damages in this case are awarded pursuant to the state law claims and not the RICO claims, as discussed above, the Court must follow state law in regard to the award of attorneys' fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31 (1975) ("state law denying the right to attorney's fees or giving right thereto, which relfects a substantial policy of the state, should be followed") (internal quotations omitted). In general, New York adheres to the American Rule that attorney's fees are not recoverable absent a contractual or statutory provision providing for the award of attorney's fees to the prevailing party. *See United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, F.3d 369, 34, 74 (2d Cir. 2004). There is no distinction in the instant action. For these reasons, and based on Plaintiff's lack of support for an award of attorney's fees, I respectfully recommend to Judge Platt that attorney's fees not be awarded in this case.

## V.    CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Platt that: (1) a default judgment is warranted and should be entered against Defendants DFA, Arango, AAGR, Alvarez, Mills and Duval; (2) the Plaintiff be awarded damages in the amount of $33,930; and (3) that Plaintiff be awarded reimbursement of costs in the amount of $6,091.00. I further recommend that the Court withhold entry of the award of damages pending Plaintiff's submission of the necessary appraisal reflecting the value of the Jamaica, New York house as of May 2002.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Townes, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Townes prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Counsel for Plaintiff is directed to serve a copy of this Report and Recommendation on the Defendants forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
March 28, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge